IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JUDY L. DUFFY,<br><br>     Plaintiff,<br><br><br><br>          vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>     Defendant. | MEMORANDUM DECISION AND<br>ORDER ON ADMINISTRATIVE<br>APPEAL<br><br><br><br>Case No. 1:09-CV-157 TS |

        This matter comes before the Court on Plaintiff Judy L. Duffy's appeal from the decision

of the Social Security Administration denying her application for disability insurance benefits

and supplemental security income.  Having considered the arguments set forth by the parties,

reviewed the factual record, relevant case law, and being otherwise fully informed, the Court will

reverse the administrative ruling and remand for further proceedings, as discussed below.

# I.  STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

---

[1]*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2]*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3]*Id.*

[4]*Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5]*Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

## II. BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on March 27, 2006.[7] Plaintiff's claim was initially denied on November 14, 2006,[8] and upon reconsideration on April 17, 2007.[9] Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on June 9, 2008.[10] The ALJ issued a decision on September 5, 2008, finding Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on October 7, 2009.[12] Plaintiff then filed the instant action.

### B. MEDICAL HISTORY

Plaintiff has been treated for a number of ailments, including arthritis, knee, hip, and back problems, migraines, urinary incontinence, sleep apnea, high blood pressure, ulcers, and depression. Of particular importance in this action is Plaintiff's mental health treatment.

---

[7] R. 106-113, 117-120.

[8] *Id.* at 64.

[9] *Id.* at 67.

[10] *Id.* at 20.

[11] *Id.* at 10-19.

[12] *Id.* at 1-3.

Plaintiff began counseling with Dr. Alton Freestone in 2004 and continued until May 2006.[13] Dr. Freestone noted that Plaintiff had been in therapy for most of her life.[14] Dr. Freestone's notes reflect that Plaintiff was physically and emotionally abused while growing up and that she was physically abused by her first husband.[15] Dr. Freestone further noted that Defendant had been suicidal in the past.[16] Dr. Freestone diagnosed Plaintiff with major depressive disorder, recurrent, mild.[17] Dr. Freestone rated Plaintiff's global assessment of function ("GAF") at 41-50, indicating serious symptoms or serious impairments in social, occupational, or school functioning.[18]

On October 5, 2006, Plaintiff underwent a psychological evaluation with Dee Duncan, Ph.D.[19] Plaintiff represented that her daily routine consisted of: getting up at 5:00 a.m., taking her two daughters on their paper route, napping, getting her children ready for school, doing housework and chores, preparing meals on occasion, helping with homework, getting her children ready for bed, and going to sleep around midnight.[20]

---

[13]*Id*. at 371.

[14]*Id*.

[15]*Id*.

[16]*Id*. at 372.

[17]*Id*. at 373.

[18]*Id*.  *See Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (discussing GAF scores).

[19]R. at 310.

[20]*Id*.

During the interview with Dr. Duncan, Plaintiff "endorsed depressed mood, suicide ideations and suicide attempts in the past."[21] Plaintiff reported that she had attempted suicide six times.[22] Plaintiff further "endorsed the following behaviors and symptoms association with Depression: anhedonia, decreased energy, fatigue, a sense of hopelessness and worthlessness, changes in appetite and sleep patterns, guilt feelings and difficulty making decisions."[23] Dr. Duncan found that Plaintiff met the criteria for depression and diagnosed her with major depressive disorder, recurrent, moderate.[24]

Plaintiff resumed treatment with Dr. Freestone in November 2007, "due to her having some significant suicidal thoughts."[25] Dr. Freestone later discovered that Plaintiff had taken an overdose of medication, leading to her husband and church leader to get Plaintiff back into therapy.[26]

On January 8, 2008, Plaintiff made an emergency appointment with Dr. Freestone because she was feeling suicidal.[27] On January 22, 2008, Plaintiff was "doing some better" but stated that she was struggling with getting up in the mornings and getting her kids to school and

---

[21]*Id*. at 311.

[22]*Id*.

[23]*Id*.

[24]*Id*. at 311, 312.

[25]*Id*. at 471.

[26]*Id*. at 472.

[27]*Id*.

that, as a result, she was fighting with her husband on this issue.[28]  On February 19, 2008, Dr.

Freestone noted that Plaintiff "was the happiest that I have seen her this year."[29]  By March 24,

2008, Plaintiff was very upset again due to a fight with her husband concerning house cleaning

and getting the children to school.[30]  Plaintiff also expressed some suicidal ideation.[31]  The next

week, Plaintiff discussed a conversation with her church leader, where he put an ultimatum in

place whereby Plaintiff had to get her kids to school and keep her home clean or her church

leader would cut off counseling.[32]  On April 14, 2008, Plaintiff stated that she was struggling

with the church leader's ultimatum.[33]

In May 2008, Dr. Freestone completed a Mental Capacity Assessment regarding

Plaintiff.[34]  In that Mental Capacity Assessment, Dr. Freestone opined that Plaintiff would have

moderate limitations in a number of areas and marked limitations in her ability to perform

activities within a schedule, maintain regular attendance, and be punctual within customary

---

[28]*Id*. at 472-473.

[29]*Id*. at 473.

[30]*Id*. at 474.

[31]*Id*.

[32]*Id*.

[33]*Id*.

[34]*Id*. at 558-561.

tolerances.[35]  Dr. Freestone further opined that Plaintiff would miss 3-4 days of work every

month due to her impairments.[36]

During the administrative proceedings, state agency medical consultants opined that

Plaintiff's mental impairments did not meet or equal a listing and that she had no more than

moderate limitations in mental residual functional capacity.[37]  These assessments, however, took

place before Plaintiff's most recent therapy treatment and Dr. Freestone's May 2008 Mental

Capacity Assessment.

C.      HEARING TESTIMONY

Plaintiff testified at the hearing before the ALJ concerning her mental health.  Plaintiff

stated that she had severe depression and, at times, wanted to be dead.[38]  Plaintiff testified that

she did not like herself and had thoughts of suicide "all the time."[39]  Plaintiff further represented

that she had attempted suicide.[40]

---

[35]*Id*. at 558.

[36]*Id*. at 559.

[37]*Id*. at 316-329, 381-394, 395-397, 399-401.

[38]*Id*. at 45.

[39]*Id*. at 46.

[40]*Id*.

Plaintiff testified that, as a result of her depression, she has problems attending to her personal hygiene.[41]  Plaintiff states that there are times when she does not feel like moving and simply wants to stay in bed.[42]

Plaintiff testified that she goes to church, but has little other social interaction.[43]  Plaintiff explained that she does not "want to associate with anybody."[44]  Plaintiff stated that she does not want to be with people, that she does not want them to see her, and that she does not want to talk to them.[45]  Plaintiff stated that she has not been able to participate in family events because of her physical and mental problems.[46]  Plaintiff further testified that she only leaves the house twice a week and does not want to be out.[47]

Plaintiff testified that she does not cook because she does not feel like cooking and only cooks simple things when she does.[48]  Plaintiff also related that her physical and mental problems have created difficulties with her family.[49]

---

[41]*Id*. at 47.

[42]*Id*.

[43]*Id*. at 48.

[44]*Id*.

[45]*Id*.

[46]*Id*. at 49.

[47]*Id*. at 49-50.

[48]*Id*. at 51.

[49]*Id*. at 51-52.

D.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claims.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 27, 2006.[50]  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: arthritis, knee problems, sleep apnea, migraines, depression, high blood pressure, bleeding ulcers, dizziness, blurriness, and depression.[51]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[52]  At step four, the ALJ found that Plaintiff had a residual functional capacity consistent with the ALJ's hypothetical to the vocational expert and had no past relevant work.[53]  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.[54]  Therefore, the ALJ found that Plaintiff was not disabled.[55]

### III.  DISCUSSION

Plaintiff raises three arguments in her brief: (1) the ALJ erred in failing to properly evaluate the opinions of Plaintiff's treating therapist; (2) the ALJ erred in his evaluation of

---

[50]*Id*. at 12.

[51]*Id*. at 13.

[52]*Id*. at 13-14.

[53]*Id*. at 14-18.

[54]*Id*. at 18-19.

[55]*Id*. at 19.

whether Plaintiff's impairments meet or equal listing 12.04; and (3) the ALJ erred by failing to follow the law in determining Plaintiff's credibility. The Court will address each argument in turn.

A.    WHETHER THE ALJ ERRED IN FAILING TO PROPERLY EVALUATE THE OPINIONS OF PLAINTIFF'S TREATING THERAPIST

Plaintiff first argues that the ALJ erred in rejecting the opinions of her treating therapist, Dr. Freestone. The ALJ, in reviewing the opinions of treating sources, must engage in a sequential analysis.[56] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[57] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[58] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[59]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[60] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to

---

[56] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[61]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[62] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[63]

As set forth above, Dr. Freestone completed a Mental Capacity Assessment regarding Plaintiff in May 2008.[64] In that Mental Capacity Assessment, Dr. Freestone opined that Plaintiff would have moderate limitations in a number of areas and marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[65] Dr. Freestone further opined that Plaintiff would miss 3-4 days of work every month due to her impairments.[66]

The ALJ rejected Dr. Freestone's May 2008 assessment. The ALJ did not give any weight to the assessment "because it is in conflict with all the other records."[67] In making this

---

[61]*Id*. at 1301 (quoting *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[62]*Id*.

[63]*Id*.

[64]R. at 558-561.

[65]*Id*. at 558.

[66]*Id*. at 559.

[67]*Id*. at 14.

determination, the ALJ reviewed and discussed a number of Plaintiff's records going back to 2005. Importantly, the ALJ did not discuss any of Dr. Freestone's more recent treatment notes.

Dr. Freestone's treatment notes are discussed in detail above. Of particular interest are those treatment notes beginning in November 2007, when Plaintiff resumed treatment with Dr. Freestone. Those notes reveal that Plaintiff was having significant suicidal thoughts and had even attempted suicide, resulting in resumed treatment. Those notes also reveal Plaintiff's difficulties in performing daily activities, such as getting her children ready for school and cleaning her home. These difficulties resulted in arguments with Plaintiff's husband and an ultimatum from Plaintiff's church leader. Despite these things, Plaintiff continued to struggle with these tasks.

These treatment notes fully support Dr. Freestone's May 2008 assessment where he opined that Plaintiff would have moderate limitations in a number of areas and marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and would miss 3-4 days of work every month due to her impairments. The ALJ, however, failed to discuss these treatment notes. Instead, the ALJ relied heavily on state agency consultants, who made their opinions without the benefit of these treatment notes.

Based on these considerations, the Court finds that this matter must be remanded to the ALJ for further consideration of Dr. Freestone's opinions, especially in light of his most recent

treatment notes.  Additionally, the ALJ may wish to seek any additional treatment notes from Dr.

Freestone to more fully develop the record.[68]

B.      WHETHER THE ALJ ERRED IN HIS EVALUATION OF WHETHER PLAINTIFF'S
        IMPAIRMENTS MEET OR EQUAL LISTING 12.04

Plaintiff next argues that the ALJ erred in his evaluation of whether Plaintiff met or

equaled listing 12.04.

Whether a claimant's condition meets or equals the criteria for a listed impairment is

determined on the basis of the medical evidence alone.[69]  When an ALJ arrives at a conclusion

unfavorable to the plaintiff, the ALJ must discuss evidence supporting his decision and give the

reason or reasons for finding that the claimant is not disabled.[70]  While the ALJ must consider all

of the evidence in arriving at a decision, a discussion of all the evidence is not required.[71]

However, merely giving a summary conclusion is not sufficient.[72]

Listing 12.04 requires either: (1) the requirements of both Paragraphs A and B to be met;

or (2) the requirements of Paragraph C to be met.  Paragraph B of Listing 12.04 requires at least

two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in

---

[68]*See* 20 C.F.R. § 404.1512(e)(1).

[69]*Id*. § 404.1526(b).

[70]*Clifton*, 79 F.3d at 1009.

[71]*Id*.

[72]*Id*.

maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

The ALJ found that Plaintiff had "no restriction in activities of daily living . . .; moderate difficulty in maintaining social functioning; moderate difficulty in concentration[,] persistence[,] or pace; and no episodes of decompensation of extended duration."[73] This conclusion, however, is based on the ALJ's rejection of Dr. Freestone's opinions and the ALJ's failure to discuss Dr. Freestone's more recent treatment notes. Those treatment notes may support a finding of marked restrictions in her activities of daily living and her ability to maintain concentration, persistence, and pace, but were not discussed by the ALJ. As this matter must be remanded for reconsideration of Dr. Freestone's opinions, this matter also must be remanded for reconsideration of whether Plaintiff meets or equals listing 12.04.

C.    WHETHER THE ALJ ERRED BY FAILING TO FOLLOW THE LAW IN
       DETERMINING PLAINTIFF'S CREDIBILITY

Social Security Ruling ("SSR") 96-7p sets out relevant factors an ALJ should consider in determining credibility. These include:

> (1) the individual's daily activities; (2) the location, duration, frequency, and
> intensity of the individual's pain or other symptoms; (3) factors that precipitate
> and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects
> of any medication the individual takes or has taken to alleviate pain or other
> symptoms; (5) treatment, other than medication, the individual receives or has
> received for relief of pain or other symptoms; (6) any measures other than
> treatment the individual uses or has used to relieve pain or other symptoms (e.g.,
> lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping

---

[73]R. at 14.

on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[74]

In determining credibility, the ALJ must consider the entire case record.[75] However, the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility . . ."[76]

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms."[77] However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible."[78]

For the same reasons discussed above, the ALJ's determination of Plaintiff's credibility must be remanded to be reconsidered after consideration of Dr. Freestone's treatment notes.

## IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

---

[74]SSR 96-7p.

[75]*Id.*

[76]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[77]R. at 17.

[78]*Id.*

The Clerk of Court shall enter judgment remanding this case and shall close this case forthwith.

The hearing set for July 15, 2010, is STRICKEN.

DATED   June 21, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge